UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RODNEY BEATTIE,

                Plaintiff,

    -against-                                         5:15-CV-1315 (LEK/TWD)

CREDIT ONE BANK,

                Defendant.

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Rodney Beattie ("Plaintiff") commenced an action against Credit One Bank, N.A. ("Defendant") for violation of the Telephone Consumer Protection Act, ("TCPA") 47 U.S.C. § 227 *et seq.* Dkt. No. 1 ("Complaint") ¶¶ 1, 18–23. Presently pending before the Court is Defendant's Motion to Stay and Compel Arbitration. Dkt. Nos. 7 ("Motion"), 7-1 ("Memorandum"), 8-1 ("Opposition"), 9 ("Reply"). For the following reasons, Defendant's Motion to Stay and Compel Arbitration is granted.[1]

**II.    BACKGROUND**

    **A.  Plaintiff's Allegations**

Since 2013, Plaintiff has had a credit card account with Defendant. Dkt. No. 7-3 ("Application"); Compl. ¶ 15. Originally, Plaintiff consented to Defendant contacting him on his cellphone concerning his credit card account. Compl. ¶¶ 12, 15. The cellphone number that Plaintiff provided to Defendant incurred charges for incoming calls. Id. ¶ 12. Defendant

---

[1] While the Motion is styled as "Motion to Dismiss or Stay and Compel Arbitration," the Memorandum and Reply do not make arguments in support of dismissal. Mem. at 1–12; Reply at 1–5. Therefore, the Court will treat the Motion as one to stay and to compel arbitration.

repeatedly contacted Plaintiff on this cellular number from April 2015 through October 2015. Id. ¶ 13. In September 2015, Plaintiff revoked his consent for Defendant to contact him through his cellphone. Id. ¶ 15. Defendant acknowledged Plaintiff's revocation but continued to make "multiple telephone calls" to Plaintiff from September through October 2015. Id. ¶¶ 15–16, 18. Defendant's calls to Plaintiff were not for emergency purposes. Id. ¶ 19.

### B. Arbitration Agreement

Plaintiff opened his account with Defendant on or about October 2, 2013, by applying through Credit One's website. Application; Dkt. No. 7-2 ("Harwood Affidavit") ¶ 7. Upon approval of the online application, Defendant mailed a credit card to Plaintiff and enclosed within the same envelope a copy of the "Visa/Mastercard Cardholder Agreement, Disclosure Statement and Arbitration Agreement." Dkt. No. 7-4 ("Cardholder Agreement"); Aff. ¶¶ 8–9. The arbitration clause of the Cardholder Agreement is as follows:

> **PLEASE READ THIS PROVISION OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT. IN ARBITRATION, YOU MAY CHOOSE TO HAVE A HEARING AND BE REPRESENTED BY COUNSEL.**
>
> *Agreement to Arbitrate:*
>
> You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us

> (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 et seq., and (to the extent State law is applicable), the State law governing this Agreement.
>
> ***Claims Covered:***
>
> Claims subject to arbitration include, but are not limited to, disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination of your account; any disclosures or other documents or communications relating to your account; any transactions or attempted transactions involving your account, whether authorized or not; billing, billing errors, credit reporting, the posting of transactions, payment or credits, or collections matters relating to your account; services or benefits programs relating to your account, whether or not they are offered, introduced, sold or provided by us; advertisements, promotions, or oral or written statements related to (or preceding the opening of) your account, goods or services financed under your account, or the terms of financing; the application, enforceability or interpretation of this Agreement, including this arbitration provision; and any other matters relating to your account, a prior related account or the resulting relationships between you and us. Any questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.

Cardholder Agreement at 5–6. On or about October 24, 2013, Plaintiff activated the credit card, made various charges, and made several payments on the account. Harwood Aff. ¶ 10–11; Dkt. No. 7-5 ("Billing Statements") at 1–5.

### C. Procedural History

Plaintiff filed the instant matter on November 5, 2015, alleging that Defendant violated the TCPA. Compl. ¶ 1, 18–23. Defendant moved to stay and compel arbitration on January 25, 2016, pursuant to the Federal Arbitration Act, ("FAA") 9 U.S.C. § 1, *et seq.* Mem. at 1.

## III. LEGAL STANDARD

For motions brought under the FAA, when the "relief sought is an order to compel arbitration or to prevent arbitration," a standard similar to a motion for summary judgement is appropriate. Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003); see also 9 U.S.C. § 4. A trial is required only if there is an "issue of fact as to the making of the agreement for arbitration." Bensadoun, 316 F.3d at 175.

The FAA expresses a "congressional declaration of a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), superseded on other grounds by 9 U.S.C. § 16. Unless it is clearly provided otherwise, it is "'the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter.'" Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 301 (2010) (quoting AT&T Techs, Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 651 (1986)). Even when a "validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand," there is a rebuttable presumption of arbitrability. Id.

Accordingly, the Second Circuit has established a four-point test to determine whether all or part of an action should be referred to arbitration. The four-part inquiry examines the following questions: (1) whether the parties agreed to arbitrate, (2) whether the matter is within the scope of that agreement, (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable, and (4) whether to stay the balance of the proceedings pending arbitration, if some but not all of the claims are arbitrable. JLM Indus., Inc. v. Stolt-

Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004) (quoting Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 75–76 (2d Cir. 1998)).

IV. **DISCUSSION**

    A. **Agreement**

        *1. Generic Agreement*

Defendant argues that Plaintiff's acceptance and repeated use of a credit card demonstrates Plaintiff's acceptance of the Cardholder Agreement. Mem. at 5; Reply at 2. Plaintiff argues that a generic agreement and affidavit are insufficient to prove that an arbitration agreement exists. Opp'n at 8, 10.

State law determines whether parties agreed to arbitrate. Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002) (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Here, the parties agree that New York law governs the claim. Opp'n at 7; Reply at 2–3. Under New York law, "[i]t is clear . . . that the regular use of a credit card constitutes sufficient evidence of the card user's consent to the terms of the agreement governing the account." Salerno v. Credit One Bank, N.A., No. 15-CV-516, 2015 WL 6554977, at *5 (W.D.N.Y. October 29, 2015). Here, Plaintiff provided no information concerning any differences, substantive or otherwise, between the generic agreement and the agreement Plaintiff presumably received. Furthermore, Plaintiff admitted he has an account with Defendant, Compl. ¶ 15, and chose to activate, use, and make payments on the credit card, Billing Statements at 2–5.

Plaintiff argues that the generic agreement may not be the actual agreement sent to Plaintiff and therefore "may or may not apply to Plaintiff's credit card." Compl.; Opp'n at 7–8, 10. In this vein, Plaintiff contends that Harwood might not have personal knowledge of the

5

mailing described in his affidavit, but makes no claim that the information within the affidavit is faulty aside from this argument that the affidavit is inadmissible. Opp'n at 9.

Sworn affidavits of corporate officers are sufficient proof of mailing because customary mailing practices, even if proven by circumstantial evidence, can serve to demonstrate that the agreement was actually mailed. Id. at *4 (citing Kurz v. Chase Manhattan Bank USA, N.A., 319 F. Supp. 2d 457, 463 (S.D.N.Y. 2004). The Vice President of Portfolio Services at Credit One Bank, Gary Harwood, states that the generic Cardholder Agreement attached to Defendant's motion was a "true and correct copy" of the agreement mailed to Plaintiff. Harwood Aff. ¶ 8. Further, Harwood notes that including a Cardholder Agreement when mailing a credit card is Defendant's policy. Id. ¶ 9. Plaintiff offers no evidence nor makes any claim that he did not receive an agreement or that the agreement he received had language different from the generic agreement. Also notably, affidavits similar to Harwood's, including affidavits from Harwood himself, have been accepted as circumstantial evidence in similar claims. see Salerno, 2015 WL 6554977, at *1; see also Velez v. Credit One Bank, No. 15-CV-4752, 2016 WL 324963, at *3 (E.D.N.Y January 25, 2016).

Therefore, the Court finds that there is no genuine dispute as to whether Plaintiff agreed to the terms of the Cardholder Agreement requiring arbitration.

    *2. Unconscionability*

Plaintiff argues that even if there is a valid agreement, the arbitration clause is procedurally unconscionable. Opp'n at 11. Plaintiff argues (1) that the arbitration clause was "buried [in a] contract full of convoluted legal terms in tiny print," (2) that Plaintiff had "no choice but to accept . . . should he want the agreement," and (3) that the agreement was

6

unilateral. Opp'n at 12. Defendant argues that procedural unconscionability alone is insufficient to render a contract unenforceable. Reply at 2–3.

Under New York law, a contract may be "unconscionable when there is an 'absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 207 (2d Cir. 1999) (quoting 8 Samuel Williston, *A Treatise on the Law of Contracts*, § 18:9, at 54 (Richard Lord ed., 4th ed. 1998)). However, under New York law, "there must be a showing that such a contract is both procedurally and substantially unconscionable." Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010) (citing Gillman v. Chase Manhattan Bank N.A., 534 N.E.2d 824 (N.Y. App. Div 1988). Procedural unconscionability "concerns the formation process" of the contract, while substantive unconscionability concerns "the content of the contract." Id. at 121–22 (citing State v. Wolowitz, 468 N.Y.S.2d 131 (App. Div. 1983)). A "take it or leave it" clause in a contract is "not sufficient under New York law to render the [arbitration] provision procedurally unconscionable." Id. at 122 (alteration in original) (quoting Nayal v. HIP Network Servs. IPA, Inc., 620 F. Supp. 2d 566, 570–71 (S.D.N.Y. 2009)); see also Tsadilas v. Providian Nat.'l Bank, 786 N.Y.S.2d 478 (App. Div. 2004) ("Arbitration agreements are enforceable despite an inequality in bargaining power." (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991))).

Plaintiff only argues procedural unconscionability. Opp'n at 11–12. Since both procedural and substantiative unconscionability are required in the state of New York, the Court finds that the agreement is not unconscionable. In any event, Plaintiff's procedural arguments would fail for several reasons. First, despite Plaintiff's contentions, the arbitration clause is in large bold

print and consists of two of the six pages of the entire agreement. Cardholder Agreement at 5–6. Second, Plaintiff does not plead any duress, fraud, pressure, inability to retain counsel, or insufficient time to read the agreement. Plaintiff merely argues that the contract was essentially of a "take it or leave it" variety, Opp'n at 12, an allegation that, by itself, does not rise to the level of unconscionability under New York law, Ragone, 595 F.3d at 121–22. Finally, there is bilateral language throughout the agreement referring to the rights of both Defendant and Plaintiff to initiate arbitration. Cardholder Agreement at 5. Although Defendant has the unilateral ability to modify the terms of the Cardholder Agreement, Defendant must put Plaintiff on notice of any modification and offer Plaintiff the opportunity to terminate his account in response to the modification. Id. at 2.

Therefore, the Court finds that the Cardholder Agreement was not unconscionable under New York law.

**B. Scope**

Plaintiff argues his claims are not subject to the arbitration provision. Opp'n at 14. Plaintiff further argues that the only collateral relationship is a "too tenuous" debtor-creditor relationship. Id. at 16. Defendant claims that "competing interpretations of an agreement containing an arbitration provision is not a sufficient basis to overcome the presumption of arbitrability." Mem. at 8. Defendant also argues that the arbitration agreement governing Plaintiff's credit card is sufficiently broad. Id. at 9.

The Second Circuit has held that "[f]ederal policy requires us to construe arbitration clauses as broadly as possible." Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995) (alteration in original) (quoting Threlkheld & Co. v. Metallgesellschaft Ltd.,923

F.2d 245, 248 (2d Cir. 1991)). Additionally, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Cone, 460 U.S. at 24–25. Courts have broadly construed an arbitration clause when the clause contains expansive language discussing many potential claims. JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 172 (2d Cir. 2004). If the arbitration clause is broad, there is presumption of arbitrability of a collateral matter if the claim implicates issues of contract construction or the parties' rights and obligations under it. Id.

The language of the arbitration clause in the Cardholder Agreement covers an expansive array of claims. Cardholder Agreement at 6. Notably, certain parts of the agreement are relevant to the factual allegations that form the basis of the claim, such as the following:

> Claims subject to arbitration include, but are not limited to, disputes relating to the . . . treatment, operation, handling, limitations on or termination of your account . . . any transactions or attempted transactions involving your account, whether authorized or not; billing . . . collections matters relating to your account; services or benefits programs relating to your account . . . advertisements, promotions, or oral or written statements related to (or preceding the opening of) your account . . . the application, enforceability or interpretation of this Agreement, including this arbitration provision . . . and any other matters relating to your account . . . the resulting relationships between you and us. Any questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.

Id. Particularly relevant to the instant dispute are "the treatment, operation, handing" and "collection matters," as well as "any other matters relating to your account." Id. The TCPA claim is not factually separate from the contract because the nature of the call involves the collection

9

on, servicing, and handling of the account. As such, the Court finds that the scope of the arbitration agreement is sufficiently broad to cover Plaintiff's claim.

## C. Arbitrability of the TCPA

Plaintiff also argues that the TCPA claims are not subject to arbitration. Opp'n at 13–14.[2]

When a federal statutory claim is asserted, the Court has a duty to consider "whether Congress evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Green Tree Fin. Corp. Ala. v. Randolph, 531 U.S. 79, 90 (2000). The "burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue" is on the party seeking to avoid arbitration. (Randolph, 531 U.S. at 91–92); accord McCormick v. Citibank, NA, No. 15-CV-46, 2016 WL 107911, at *5 (W.D.N.Y. 2016). The handful of courts that have considered the text and legislative history of the TCPA have found "nothing . . . to suggest that Congress intended TCPA claims to be non-arbitrable." . Salerno, 2015 WL 6554977, at *5–6 (collecting cases); see also Velez, 2016 WL 324963, at *7. Therefore, the Court finds that Plaintiff's TCPA claims are subject to arbitration.

## D. Stay Pending Arbitration

The FAA "requires a stay of proceedings when all claims are referred to arbitration and a stay requested." Katz v. Cellco P'ship, 794 F.3d 341, 343 (2d Cir. 2015); see also 9 U.S.C. § 3. Since the Court finds the sole claim set forth by Plaintiff to be subject to the arbitration clause,

---

[2] Plaintiff also argues that the intention of Congress concerning TCPA claims may be subject to revoked consent because the Federal Communications Commission ("FCC") stated that "consumer consent to receive . . . messages is not unlimited." Opp'n at 14. However, the Court finds that the FCC statements, which focused on subscriptions text messages and automatic callers, distinguishable from the instant matter. Rules and Regs. Implementing the Tel. Consumer Prot. Act of 1991, SoundBite Comm. Inc., 27 FCC Rcd. 15391–93 (Nov. 26, 2012).

the proceedings in this action must also be stayed pending the outcome of the arbitration.

Therefore, Defendant's request to stay this action pending arbitration is granted.

**V.     CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion to Compel Arbitration and Stay Proceeding (Dkt. No. 7) is **GRANTED**; and it is further

**ORDERED**, that proceeding in this action are **STAYED** until such time as the parties by consent have advised the Court to lift the stay, or until it is shown by other appropriate submission that the arbitration has been completed; and it is further

**ORDERED**, that parties proceed to arbitration consistent with the terms of the Cardholder Agreement (Dkt. No. 7-4); and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     August 09, 2016
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge